No. 14,424.

HANKEY v. DOWNEY.

PATENT-RIGHT.—*Sale of.*—*Statute Regulating.*—*Validity of.*—The statute of this State (sections 6054, 6055, R. S. 1881), requiring vendors of patent-rights to file with the county clerk copies of the letters-patent, and to make an affidavit that the letters are genuine, and requiring, also, that promissory notes given for such rights shall contain the words " given for a patent-right," is valid.

SAME.—*Statute Applies to Intangible Right.*—*Articles Manufactured Under Letters-Patent not Affected.*—The statute mentioned applies only to the intangible right evidenced by the patent; it has no application to the tangible article manufactured under letters-patent.

From the Howard Circuit Court.

*J. C. Blacklidge, W. E. Blacklidge* and *B. C. Moon,* for appellant.

*J. O'Brien* and *C. C. Shirley,* for appellee.

ELLIOTT, J.—Our decisions affirm that the statute requiring vendors of rights secured by letters-patent to file with the county clerk copies of the letters, and to make an affidavit that the letters are genuine, and requiring, also, that promissory notes given for such rights shall contain the words "given for a patent-right," is valid. *Fry v. State,* 63 Ind. 552 ; *Toledo Agricultural Works* v. *Work,* 70 Ind. 253 ; *Brechbill* v. *Randall,* 102 Ind. 528 ; *Central Union Tel. Co.* v. *Bradbury,* 106 Ind. 1 ; *Hockett* v. *State,* 105 Ind. 250 ; *New* v. *Walker,* 108 Ind. 365.

From these decisions we do not depart, but we do not regard them as decisive of this case, for here the principal question is whether the statute applies to an article manufactured under a patent.

Our decisions, and those of other courts, make a distinction between the tangible thing manufactured under a patent and the intangible right evidenced by the patent. There is, in

our judgment, a reason, and a very satisfactory one, for this distinction.

In *New* v. *Walker, supra,* we affirmed that the statute was valid because it provided for the protection of the citizens by making provisions applicable to property of a unique character, for property of an intangible nature secured by an exercise of a governmental power of a peculiar kind, and operative upon only a single class of rights. The decisions in *State* v. *Peck,* 25 Ohio St. 26, and *Tod* v. *Wick,* 36 Ohio St. 370, declare that a statute similar to ours is valid, but that it does not apply to articles manufactured under a patent. The distinction between the tangible thing and the intangible right is clearly established and maintained in very able opinions. Other cases declare a like doctrine. *Webber* v. *Virginia,* 103 U. S. 344; *Stephens* v. *Cady,* 14 How. 528; *Stevens* v. *Gladding,* 17 How. 447; *Patterson* v. *Kentucky,* 97 U. S. 501; *Palmer* v. *State,* 39 Ohio St. 236; *Woolen* v. *Banker,* 17 Alb. L. J. 72.

In holding, as we have held, and as other courts have held, that the Legislature has a right to make provision for securing and recording evidence of patents and for regulating the subject of promissory notes, we did not hold, nor did these other courts hold, that the States might discriminate against patented property. *New* v. *Walker, supra,* and cases cited; *State* v. *Peck, supra; Tod* v. *Wick, supra; Horstman* v. *Zimmerman,* 4 Atl. R. 171; *Haskell* v. *Jones,* 86 Pa. St. 173.

On the contrary, the difference between the article manufactured and the right secured by the patent is clearly recognized. We need not decide whether it would be within the power of the State Legislature to discriminate against articles manufactured under a patent, for all that we need decide, and all that we have decided on this point is, that it may reasonably regulate the transfer of intangible rights of a peculiar nature. It may be that the States can not discriminate against property manufactured under a patent, but they may enact regulations respecting its use, sale and transfer, if it is treated

as property of a similar class is treated. *Hockett* v. *State,* *supra.* But we need not further pursue this line of discussion, for, as we have already said, the controlling question by which we are faced is as to the meaning of our statute, and not as to the power of the Legislature to enact it.

The words of the statute are : "It shall be unlawful for any person to sell or barter, or to offer to sell or barter, any patent-right, or any right which such person shall allege to be a patent-right, in any county within this State, without first filing with the clerk of the court of such county copies of the letters-patent, duly authenticated, and, at the same time, swearing or affirming to an affidavit, before such clerk, that such letters-patent are genuine, and have not been revoked or annulled, and that he has full authority to sell or barter the right so patented." R. S. 1881, section 6054.

In referring to promissory notes executed for a patent-right, the words employed are " patent-right, or right claimed to be a patent-right." As there is a distinction between the intangible right and the tangible thing manufactured under the right, and as the statute uses words embracing only the intangible right, it can not be extended by construction to tangible articles manufactured under letters-patent. The words used in the statute have a clear and well defined meaning, and that meaning we must ascribe to them. If, however, we were compelled to look beyond the words, we should not hesitate to hold that it was not the intention of the Legislature to compel every merchant or dealer who sells articles manufactured under a patent to perform the acts prescribed by the statute, but that the intention was to compel the performance of those acts by vendors of the intangible rights secured by the letters-patent. This intention is quite apparent when the general scope and purpose of the statute are given consideration, but, as we have said, the words themselves are unequivocal and clear.

Judgment reversed.

Filed Oct. 13, 1888; motion to make mandate more specific overruled Nov. 8, 1888.