## GRANITE CITY BANK v. SIGRID TVEDT AND ANOTHER.[1]

### May 14, 1920.

### No. 21,731.

**Bankruptcy — validity of creditor's claim — res judicata.**

1. An adjudication by the Federal court in involuntary bankruptcy proceedings, initiated on the petition of a creditor, that the debtor proceeded against is not insolvent, such adjudication being founded on a verdict of a jury impaneled under section 19a of the Bankruptcy Act, is not res judicata of the question of the validity of the claim of the creditor so initiating the proceeding.

**South Dakota statute construed — inapplicable to purchase of patented articles.**

2. Chapter 140, Session Laws of South Dakota for the year 1905, by which all obligations taken in that state as and for the purchase price of patent rights, or rights claimed to be patent rights, construed, and *held* not to apply to obligations taken for the purchase of patented articles, as distinguished from the purchase of the patent or an interest therein.

Action in the district court for Rock county to recover $2,000 upon a promissory note. The case was tried before Nelson, J., who at the close of the testimony granted plaintiff's motion for a directed verdict against Sigrid Tvedt. From an order denying her motion for a new trial, defendant appealed. Affirmed.

*Morris & Fitzpatrick* and *C. H. Christopherson,* for appellant.
*Krause & Krause* and *E. H. Canfield,* for respondent.

BROWN, C. J.

Action upon a promissory note in which the court below at the con-

[1]Reported in 177 N. W. 767.

clusion of the trial directed a verdict for plaintiff for the amount claimed with interest. Defendant appealed from an order denying a new trial.

It appears from the record that on the twenty-first day of March, 1916, defendants made and delivered to one E. D. Aldrich their certain promissory note for the sum of $2,000, due and payable on the first day of October, 1916. Aldrich, in the due course of business and for value, indorsed and transferred the note before maturity to plaintiff, and plaintiff is now the owner and holder of the same. The action was brought to recover upon the note. Defendant Thomas Tvedt was not served and is in no way involved in the action. The answering defendant, Sigrid Tvedt, interposed by her answer two separate defenses, namely: (1) That the note was made and delivered in the state of South Dakota, in consummation of a transaction had in that state, the place of residence of all the parties; that the note was given for a patent right and is void and unenforceable by reason of the failure of the payee to indorse or cause to be indorsed on the face thereof the fact that it was so given, as required by the statutes of that state; and (2) that the validity of the note was in litigation in certain bankruptcy proceedings against the answering defendant pending in the Federal court for the district of South Dakota, and was there adjudged invalid and void for the failure of compliance with the laws of that state in the respect stated.

On motion of plaintiff the second defense was stricken from the answer and no evidence thereof was offered on the trial. The court ruled that the evidence failed to establish the first defense, and a verdict for plaintiff was directed accordingly. Both rulings were excepted to and the assignments of error present them as the only questions urged in support of the appeal.

1. The facts made the basis of the second defense, so stricken out by the court, are fully set out in the answer and are not in dispute. It appears that some time prior to the commencement of the action involuntary bankruptcy proceedings were initiated against defendant in the Federal court of South Dakota on the petition of plaintiff herein, in which it was alleged and stated that plaintiff was a creditor of defendant, and that she was insolvent and unable to pay her debts. Defendant

appeared in the proceeding and by her answer put in issue the alleged indebtedness to plaintiff, the petitioning creditor, and also the allegations of her insolvency, and demanded, as she had the right under section 19a of the bankruptcy act,[1] a jury trial of the issue of insolvency. Her demand was granted by the court, and that issue was thereafter in the due course of procedure duly submitted to a jury. The jury found that defendant was not insolvent, and judgment dismissing the proceedings was thereupon duly rendered and entered by the Federal court.

The contention of defendant that the judgment in that proceeding is res judicata of the question as to the validity of the note in suit is not sustained. It seems clear that the judgment can have no such effect. The question was not in fact litigated in that proceeding, defendant had no right to a trial of that feature of the bankruptcy proceeding before the jury (3 R. C. L. 208), and the trial was limited to the single issue of insolvency. With that question determined in favor of defendant the proceedings were at an end and nothing remained but to dismiss them, which was accordingly done. The validity of the note was not involved in the issue tried, nor was the determination thereof necessary to a decision of the issue of insolvency. Morss v. Franklin Coal Co. 125 Fed. 998. The judgment therefore is not res judicata thereof. State v. Great Northern Ry. Co. 134 Minn. 249, 158 N. W. 872; In re Lockenmaier, 203 Fed. 32, 121 C. C. A. 368. The question would probably be different in a case where an adjudication of bankruptcy is made, for that conclusion, presumptively at least, would include a finding of the existence of creditors and perhaps the validity and extent of their respective claims. Brandenburg, Bankruptcy (4th ed.) § 648. But the trial and determination of the preliminary question of insolvency in this case went no further and embraced no other specific issue, presumptively or otherwise. 15 R. C. L. 980; In re Julius Bros. 217 Fed. 3, 133 C. C. A. 328, L.R.A. 1915C, 89.

2. The facts are also undisputed as to the first defense, which the trial court held not sustained by the evidence. It appears that the Williams Investment Company, a corporation of South Dakota, with its place of business at Sioux Falls, that state, either owned or had the exclusive sale in certain territory of a patented article or device known as "Wolf's Automatic Fire Extinguisher and Thermostat." The answer-

[1][U. S. Comp. St. § 9603]

ing defendant, Mrs. Tvedt, was engaged in mercantile business at Sherman, South Dakota, in the management of which she was assisted by her son, Thomas Tvedt, codefendant in the action. The son was anxious to get into some other occupation, and his mother was willing to lend her assistance in that respect. They finally came in contact with Aldrich, who was the agent and representative of the Williams Company, and subsequent negotiations between them resulted in the contract involved in this action, the basis of defendant's first defense. By the terms of the contract Thomas Tvedt was appointed the exclusive agent of the Williams Company for the sale of the patented articles in certain specified territory, partly in South Dakota and partly in Minnesota, for the definite period of 24 months. In consideration of which, the contract reads, Tvedt thereby purchased of the Williams Company 1,000 of the patented articles, thus equipping himself for the performance of the contract and the exercise of the exclusive agency granted to him. The purchase price of the articles was fixed at $15 each; the note in suit represents a down payment thereon of $2,000, the balance being payable as the articles were subsequently ordered by Tvedt and at the rate of $12 each, which the company agreed to ship as the orders came in f. o. b. at Sioux Falls. The contract was signed in the name of the Williams Company, by Aldrich, its agent, and by Thomas Tvedt and his mother, defendant herein.

The answer contains no suggestion of a breach of the contract by the Williams Company, or that the patented articles were not as represented or of the value agreed to be paid therefor. The sole claim in this branch of the case is that the contract amounted to the sale of a patent right, or of an interest therein, and that by reason of the noncompliance with the South Dakota statute the note in suit, given in part performance thereof is null and void. If that view of the contract be the correct one, the contention that the note is null and void is sustained by the supreme court of that state in Citizens' State Bank v. Rowe, 36 S. D. 151, 153 N. W. 939, where the point was directly decided. The decision is fully supported by the authorities. 8 C. J. 95, § 162. The law of South Dakota controls the rights of the parties. But the trial court held the contract not within the statute, and if that conclusion be sound there

must be an affirmance, for no other defense is presented. We sustain the ruling of the trial court.

Section 1 of the statute in question (chapter 140, Sess. Laws S. D. 1905), provides that:

"Every person who takes any obligation in writing for any lightning rod, or any of its attachments, or for any patent right, or right claimed to be a patent right, or for payment of premium or assessment for mutual hail insurance, shall, before such writing is signed by the maker, stamp or write in red ink across the face of such written obligation, in plain legible writing, or print, the words; given for a lightning rod; or, given for a patent right; or given for premium or assessment for mutual hail insurance, as the case may require. Such obligation, so stamped, shall not be negotiable."

Section 2 declares a violation of the provisions of section 1 a misdemeanor, and imposes as a penalty a fine or imprisonment, or both fine and imprisonment, in the discretion of the court.

That the statute has no proper application to this contract seems clear. In point of substance the contract amounts to nothing more than the sale of 1,000 Wolf Automatic Fire Extinguishers, "for which a patent has been applied for and allowed." The statute deals with sales of patent rights, or rights claimed to be patent rights, and the language thereof contains no suggestion of an intention to include obligations given on the sale of patented articles of trade. No interest in the patent was transferred or attempted to be transferred by this contract, and none was thereby acquired by the defendants. And although the statute is remedial in character, to be liberally construed and applied, the language thereof is too clear and specific to justify enlargement by judicial construction. 3 Dunnell, Minn. Dig. § 8938, and citations; Huff v. Winona & St. Peter R. Co. 11 Minn. 114 (180); Cone v. Nimocks, 78 Minn. 249, 80 N. W. 1056.

Like statutes in other states have received the construction here adopted. Hankey v. Downey, 116 Ind. 118, 18 N. E. 271, 1 L.R.A. 447; Com. v. Central District & Printing Tel. Co. 145 Pa. St. 121, 22 Atl. 841, 27 Am. St. 677; State v. Peck, 25 Oh. St. 26; People's State Bank v. Jones, 26 Ind. App. 583, 58 N. E. 852, 84 Am. St. 310; Herdie v. Roessler, 109 N. Y. 127, 16 N. E. 198. The statute of the state of

Arkansas is different in its language from the South Dakota act, and the decisions of the supreme court of that state are not in point. The statute of Kansas upon the subject is similar to that in question, and the case of Nyhart v. Kubach, 76 Kan. 154, 90 Pac. 796, supports the contention of defendant. But we have no decision of the supreme court of South Dakota construing the statute with reference to a contract like that at bar, the proper tribunal to look to for an authoritative construction of the statute, in the absence of which we do not feel justified in adopting the rule of the Kansas case. A similar statute of this state was declared unconstitutional in Crittenden v. White, 23 Minn. 24, 23 Am. St. 676, though that fact has no bearing on the question here decided.

Order affirmed.