## Ullman v. Thompson.

[No. 8,380. Filed October 28, 1914.]

1. Appeal.—*Questions Reviewable.*—*Demurrer to Answers.*—*Exceptions to Conclusions of Law.*—Where all the material facts of appellant's second and third paragraphs of answer are included in the court's special finding, the exceptions to the conclusions of law present for review the question arising on the sustaining of demurrers to the paragraphs of answer. p. 131.

2. Patents.—*Sale of Patent.*—*Statutes.*—One who enters into a contract for the sale of a patent right, or the right to manufacture, use or sell a patented article, without first complying with the provisions of §§9720, 9721 Burns 1914, Acts 1899 p. 112, can not recover on such contract. p. 131.

3. Patents.—*"Invention".*—*Right to Sell.*—Where one succeeds in practically applying some principle to a machine or apparatus, resulting in usefulness, novelty, etc., the fact as well as the result of such application is known as an "invention", which may become a patent by recourse to the specified procedure, and constitutes property which he may sell independent of the statutory requirements relative to the sale of patent rights. p. 132.

4.  PATENTS.—*Letters Patent.*—*Patented Article.*—Letters patent is a written or printed instrument granted by the sovereign power granting to one the exclusive right to make, use and sell an invention, and the actual issuance of such letters makes the invention a patented article.  p. 132.

5.  PATENTS.—*Application for Letters Patent.*—*Rights of Applicant Pending Issuance of Letters.*—*Statutes.*—Section 9720 Burns 1914, Acts 1899 p. 112, requiring the filing of a copy of letters patent together with a prescribed affidavit in the office of the clerk of the county as a condition precedent to the right to sell a patent right, or the right to manufacture, use or sell a patented article, etc., has no application to the right of an inventor to enter into a contract selling to another the right to manufacture and sell an article on which he has been granted a patent, but for which letters patent have not actually been issued, since until the actual issuance of letters the invention is not a "patented article", and until their issuance there can be no compliance with the statute. p. 133.

6.  PATENTS.—*Contracts.*—*Statutory Requirements.*—A contract by the inventors of a fence brace granting the right to sell same, reciting that a patent had been granted, but that letters patent had not been issued thereon, and stating that the grantors were to receive as compensation a certain royalty on each brace manufactured, etc., sufficiently complied with §9721 Burns 1914, Acts 1899 p. 112, requiring written obligations for which any patent right, or right to manufacture, use or sell a patented article, shall form the whole or any part of the consideration, to contain the words, "given for the right to manufacture a patented article", or "words which clearly state the consideration for which the note was given".  p. 134.

7.  APPEAL.—*Review.*—*Harmless Error.*—*Refusal to Strike Out Defective Demurrer.*—Error, if any, in overruling appellant's motion to strike out the demurrer to a paragraph of his answer, on the ground that such demurrer did not comply with §344 Burns 1914, Acts 1911 p. 415, requiring a memorandum showing wherein the pleading demurred to is insufficient, was harmless, where the facts were specially found and the finding included all the material facts alleged in such paragraph of answer.  p. 135.

8.  STATUTES. — *Amendment.* — *Construction.* — When a statute is amended, it is thereafter, and as to all acts subsequently done, to be construed as if the amendment had always been there. p. 136.

From Wells Circuit Court; *Charles E. Sturgis,* Judge.

Action by Ernest L. Thompson against Joseph A. Ullman. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Simmons & Dailey* and *Robert W. Stine,* for appellant.
*Eichhorn & Vaughn* and *A. L. Sharpe,* for appellee.

CALDWELL, J.—The questions involved in this appeal may be comprehended from a statement of the special finding, the material part of which is, in substance, as follows: On March 28, 1910, appellee and Landis M. Brice, as first parties, and appellant, as second party, entered into a contract in writing. The contract recited that all the parties lived in Bluffton, Wells County, Indiana; that the United States patent office had theretofore granted to first parties, under a certain number, a patent on a fence brace, but that the letters patent had not been issued. By the contract, first parties granted to appellant the exclusive right to manufacture and sell the brace in the United States, under its number, and under the letters patent, when they should be issued. In consideration of the premises, appellant agreed to commence the manufacture of the brace immediately, and to use diligence in advertising and in supplying the demand for it, and to pay to each of the first parties monthly a royalty of three cents on each brace manufactured, but that not fewer than 12,000 braces should be manufactured, and not less than $360 should be paid to each of the first parties as royalty, in any year. The contract recited that its term should be for the life of the patent, but that if appellant should at any time fail to pay to each of first parties monthly said minimum royalty, the contract should become void.

The court found that at the date of the contract, the patent had been granted, but that letters patent thereon had not been issued; that such letters patent were issued to first parties June 21, 1910; that at the time of the execution of the contract, prior thereto and thereafter all the parties resided in Wells County, Indiana, and that the contract was executed in the city of Bluffton, Wells County. The court by specific negative facts found that first parties at no time complied with any of the terms of §9720 Burns 1914, Acts 1899 p. 112. There is no finding on the subject of whether

§9721 Burns 1914, Acts 1899 p. 112, was complied with, except as such fact appears from the contract itself, which is included in the finding.   Said §9720 is as follows: "It shall be unlawful for any person to sell or barter, or offer to sell or barter, any patent right, *the whole, or any part thereof,* or any right which such person shall allege to be a patent right, *or sell, barter, grant or license, or offer to sell, barter, grant or license the right to manufacture use or sell a patented article whether either of said rights be exclusive or non-exclusive,* in any county within the state, without first filing with the clerk of the court of such county copies of the letters patent, duly authenticated, and, at the same time, swearing or affirming to an affidavit, before such clerk that such letters patent are genuine, and have not been revoked or annulled, and that he has full authority to sell or barter, *grant or license* the right so patented, *or any part thereof, and the right to manufacture, use and sell the patented article,* which affidavit shall set forth his name, age, occupation and residence, and if any agent, the name, occupation and residence of his principal.   A copy of this affidavit shall be filed in the office of said clerk, and the clerk shall give a copy to the applicant, who shall exhibit the same to any person on demand."   Section 9721, *supra,* is as follows: "Any person who may take any obligation, in writing, for which any patent right, or right claimed by him or her to be a patent right, *or the right of manufacture, use or sell the article so patented, whether the said right, or either of them be by sale, grant or license, exclusive or non-exclusive,* shall form a whole or any part of the consideration, shall, before it is signed by the maker or makers, insert in the body of said written obligation above the signature of said maker or makers, in legible writing or print, the words, 'Given for a patent right,' or *'Given for the right to manufacture a patented article,'* or *words which clearly state the consideration for which the note was given."*   For convenience in re-

ferring to the same, we have italicized such portions of said statutes as were added by amendment in 1899. Acts 1899 p. 112. Section 9722 Burns 1914, Acts 1899 p. 112, §3, declares it to be a misdemeanor to violate any part of either of the quoted sections, and fixes a penalty therefor.

Appellee, by his amended complaint, sues to recover royalties from the making of the contract to its expiration, which event, it is alleged, occurred March 6, 1911. It is alleged that there is due and unpaid $297.83, being such royalties at $30 per month, less a payment of $40.17. The demurrer to the amended complaint was overruled. It was grounded on the fact that said amended complaint contained no allegations that the provisions of said quoted statutes had been complied with. It is doubtful, however, whether the memorandum to the demurrer is sufficiently specific to question the complaint on the ground of the absence of an allegation that the terms of §9721, *supra,* had been complied with. In this respect, the memorandum simply states in general terms that the complaint fails to show that appellee and Brice complied with said sections, in the sale, etc.

The first paragraph of answer is a general denial; the second paragraph alleges facts negatively to the effect that neither appellee nor Brice complied with the provisions of §9720, *supra.* Appellee's demurrer was sustained to this paragraph. Subsequently appellant filed a third paragraph of answer, which was substantially the same as the second, except that it was pleaded as a partial answer, directed only to so much of the amended complaint as sought to recover on said contract for braces manufactured after June 10, 1910, it being alleged that the letters patent were issued on that date. Appellant filed a motion to strike out the demurrer to the third paragraph of answer, which motion was overruled, and the demurrer sustained. The conclusions of law are in substance as follows: (1) That plaintiff is entitled to recover from defendant on the contract sued on

up to June 21, 1910, the sum of $43.83; and (2) after June 21, 1910, the sum of $268.67; (3) that appellee recover costs.

The errors assigned and relied on are to the following effect: (2) Overruling the demurrer to the amended complaint. (4) Overruling said motion to strike out said demurrer. (5, 6) Sustaining said demurrers to the second and third paragraphs of answer respectively. The seventh assignment challenges the conclusions of law in gross, and the eighth, ninth and tenth challenge the first, second and third conclusions of law severally. The second assignment is not discussed in appellant's brief, and is, therefore, waived.

From the abstract of the finding, as hereinbefore set out, it is apparent that all the material facts pleaded in the second and third paragraphs of answer are included in the court's finding as true. On such finding, the conclusions of law were stated. It is, therefore, evident that the exceptions to the conclusions of law present the same questions as the exceptions to the ruling on the demurrers to the answers. The exceptions to the conclusions of law, and to the sustaining of said demurrers, with the corresponding assignments of error present two questions: (1) Was appellee required to comply with the terms of said §9720, as a condition precedent to the right to enter into the contract declared on in the complaint? (2) Was it his duty to comply with the terms of such section after the issuing of said letters patent on June 21, 1910, the contract sued on having theretofore been executed?

Taking up the first question, the court expressly found that none of the steps outlined by the statute were taken. It follows, therefore, that if said section is applicable, appellee in entering into said contract violated the express terms of a positive statute, and that as a consequence, he would not be entitled to recover in this action. *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 49 N. E. 582, 71 Am. St. 301, 69 L. R. A. 875; *Michener* v.

*Watts* (1911), 176 Ind. 376, 96 N. E. 127, 36 L. R. A. (N. S.) 142. We proceed to determine whether said section is applicable. An examination discloses that it deals with patent rights, patented articles and letters patent, to the effect that in order that either of the first two may be dealt with as in said section specified, a duly authenticated copy of the last must be filed as therein required. Where a person succeeds in practically applying some principle to a machine or apparatus, resulting in usefulness, novelty, etc., the fact as well as the result of such application is known as an invention. Such person has a right, independent of statute, to make, use and sell such invention. But in order that he may be vested with the exclusive right so to make, use and sell such product of his own ingenuity, he must be authorized so to do by the sovereign power. Such authority is evidenced by a written or printed instrument, known as letters patent. The exclusive right created by letters patent is denominated a patent right. An article is therefore patented and consequently becomes a patented article by the actual issuing of the letters patent, under the seal of the government. See generally, *Jewett* v. *Atwood Suspender Co.* (1900), 100 Fed. 647; *Avery* v. *Wilson* (1884), 20 Fed. 856; *International Tooth Crown Co.* v. *Hanks Dental Assn.* (1901), 111 Fed. 916; *State* v. *Peck* (1874), 25 Ohio St. 26; *Societe, etc.* v. *General Electric Co.* (1899), 97 Fed. 604; *Edison Elec. Light Co.* v. *Waring Elec. Co.* (1894), 59 Fed. 358; *American Bell Tel. Co.* v. *Cushman* (1893), 57 Fed. 842.

An invention may become a patent by recourse to the specified procedure. In order that such result may be accomplished, there must be an application for a patent, favorable action on such application or the granting of the patent, and the final attaining of such end, through the issuing of letters patent. At any of these stages, the right in the invention is sufficiently tangible to be owned. It may also, as we have indicated, be used or sold

or assigned. It is therefore, property. It is property when a mere invention, as well as after a patent has been applied for or granted or issued. 22 Am. and Eng. Ency. Law (2d ed.) 273. 30 Cyc. 819. While no right in an invention may become exclusive, otherwise than through a grant by the sovereign power to that end, whereby such invention is raised to the level of a patent, the mere right to use, sell or assign an invention exists independent of any such grant or any statutory authority. Such right exists because such invention is property. Doubtless a state, subject to limitations, has authority by recourse to its police power, to regulate the sale or assignment of an invention at any of said stages; that is, when it is a mere invention, or after a patent has been applied for or granted, or the invention has become a patent by the issuing of letters to that end.

A decision of the questions now before us requires that we determine whether the State, through its legislature, has exercised power so broad in the enactment of §9720, *supra.* Such necessity results from the fact that the answers and the special findings show the existence of a mere invention and favorable action on an application for its patent at the time of the execution of said contract. Since the letters had not been issued, it had not become a patent. The right to a patent was yet inchoate, and might never become complete, since such favorable action was subject to annullment for cause shown. 30 Cyc. 819; 22 Am. and Eng. Ency. Law (2d ed.) 273. As indicated, said section deals with patent rights, patented articles and letters patent. The last named, in their relation to the fence brace involved here, were not in existence at the time of making the contract, since they had not been issued, and for the reason that they had not been issued, there was no patent right or patented article. It seems apparent that the section does not at all relate to the invention involved here in the status which it occupied at the time of the making of said contract. If it should be claimed that a state has the power to require

that a right in an invention be perfected into a patented right, as a condition precedent to the right to sell or assign it, then it may be said that by said section, the State has not done so. Said statute does not place any limitations or restrictions on the right to deal with a nonpatened invention or an invention before the letters patent have been issued. Such being the case, the owner of such an invention may sell or assign it or any right connected with it, as freely as any other property, for the reason that it is property.

A further examination of said section strengthens our conclusion that we have properly interpreted it. Thus, under said section, one may lawfully sell a patent right, etc., only by filing letters patent and making affidavit as by the section required. This section recognizes the preëxisting right to sell a patent, but it provides that such right may be exercised only subject to prescribed conditions. In the sale of the right involved, here, however, it was impossible to comply with such conditions. Appellee here could not have filed a copy or made affidavit to the genuineness of letters patent that had no existence, and which, from the status of the invention, could have had no existence. He could not have negatived the annulment or revocation of letters that had not issued. It thus appears that any interpretation of said section that makes it applicable here leads to absurdity. The following cases fairly indicate the degree of strictness with which the statute has been construed, both before and after its amendment in 1899. *Eclipse Wind Engine Co.* v. *Zimmerman Mfg. Co.* (1896), 16 Ind. App. 496, 44 N. E. 1115; *Stout* v. *Garr, Scott & Co.* (1901), 26 Ind. App. 582, 60 N. E. 357; *Hankey* v. *Downey* (1888), 116 Ind. 118, 18 N. E. 271, 1 L. R. A. 447; *First Nat. Bank* v. *Beach* (1904), 34 Ind. App. 80, 72 N. E. 287.

It is suggested that appellee failed to comply with the terms of §9721, *supra,* also, in that he did not cause

6.  to be inserted into said contract the words "given for the right to manufacture a patented article". From

what has been said in the earlier part of this opinion, it seems to us clear that such question is not presented. However, in addition to what we have said in our discussion of §9720, *supra,* much of which is applicable to a discussion of §9721, *supra,* it will be observed that the latter section requires that there be inserted into the sort of obligation described by the section the quoted words, or "words which clearly state the consideration for which the note was given". The contract here clearly and fully states the consideration for the promise to pay made by appellant, as contained in the contract. *Sandage* v. *Studebaker Bros. Mfg. Co.* (1895), 142 Ind. 148, 41 N. E. 380, 51 Am. St. 165, 34 L. R. A. 363, was decided under the statute prior to its amendment in 1899. The statute, as amended, permits the use of equivalent words in place of the words themselves. There is no error in the conclusions of law or in the rulings on the demurrers to the answers.

The fourth assignment of error is based on the overruling of appellant's motion to strike out the demurrer to the third paragraph of answer. By the amendment to §344 Burns 1908, the amended section being §344 Burns 1914, Acts 1911 p. 415, it is required that there be filed with a demurrer to the complaint for insufficiency of facts a memorandum, stating wherein the complaint is insufficient. Section 351 Burns 1914, §346 R. S. 1881, provides that the plaintiff may demur to the answer for insufficiency of facts "under the rules prescribed for demurring to a complaint". Appellant's contention is that amended §344, *supra,* should be construed with §351, *supra,* and so construing them, that such a memorandum must be included in, accompany or be filed with a demurrer to an answer. The motion is based on the absence of such a memorandum. Since the court, as we have indicated, included in the special findings all the material facts as pleaded in the third paragraph of answer, appellant received the full benefit of such facts. Such being the case, appellant was not harmed by

the court's disposition of the motion even if erroneous, and we, therefore, find it unnecessary to review the court's action in that respect. However, it seems to be recognized as the law that when a statute is amended, it is thereafter, and as to all acts subsequently done, to be construed as if the amendment had always been there. We cite the following, some of which are closely in point. Endlich, Interp. of Stat. §294; *Holbrook* v. *Nichol* (1864), 36 Ill. 161, 167; *McKibben* v. *Lester* (1859), 9 Ohio St. 627; *Turney* v. *Wilton* (1865), 36 Ill. 385, 393; *Brigel* v. *Starbuck* (1877), 34 Ohio St. 280; *State* v. *Massey* (1889), 4 L. R. A. 308, note.

There being no prejudicial error in the record, the judgment is affirmed.

NOTE.—Reported in 106 N. E. 611. As to when a state statute respecting obligations given for patents is void, see 22 Am. Rep. 67. As to state regulation of patent rights, see 6 Ann. Cas. 159. See, also, under (1) 2 Cyc. 717; (2, 5, 6) 30 Cyc. 969; (3) 30 Cyc. 822; (4) 30 Cyc. 815; (7) 3 Cyc. 386; (8) 36 Cyc. 1164.